**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:24-CR-149(KAD)-6 |
| | ) | |
| v. | ) | |
| | ) | |
| YESENIA MELENDEZ RINCON | ) | |
| | ) | |
| | ) | October 7, 2026 |

**ORDER DENYING (ECF No. 266) MOTION FOR COMPASSIONATE RELEASE**

Kari A. Dooley, United States District Judge:

Defendant, Yesenia Melendez Rincon, has moved pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for an order of compassionate release from confinement in light of her serious but currently unmet medical needs.[1] She seeks to return to Florida where she can be seen and treated by her prior oncologist, who successfully treated her for cervical cancer. The Government objects insofar as Defendant's medical records from the Bureau of Prisons belie any claim that she is not receiving treatment and indeed, she refused medical care when offered the opportunity to see an outside specialist. The Government also informs the Court that Defendant is subject to a detainer by immigration authorities and thus early release would only result in a transfer into Immigration and Custom Enforcement (ICE) custody. For the reasons that follow, the motion is DENIED.

**Discussion**

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) upon motion of the Director of the Bureau of Prisons, or (2) upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the

[1] In rendering this decision, the Court necessarily cites to sealed documents. Because the cited documents are significant to the Court's ultimate ruling on this dispositive motion, to the extent otherwise sealed information is included in the decision, it is *sua sponte* unsealed.

Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). Ms. Melendez Rincon has exhausted her administrative remedies.

Upon exhaustion of a defendant's administrative remedies, § 3582(c)(1)(A) provides that a district court "may reduce" a defendant's term of imprisonment "after considering the factors set forth in section 3553(a)," if it finds "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(a).

> The term "extraordinary" means "most unusual," "far from common," or "having little or no precedent." Webster's Third New International Dictionary 807 (1976); see 5 Oxford English Dictionary 614 (2d ed. 1989) ("[o]ut of the usual or regular course or order"). "Compelling," meanwhile, means "tending to convince or convert by or as if by forcefulness of evidence." Webster's Third New International Dictionary, at 463; see 3 Oxford English Dictionary, at 600 ("irresistible; demanding attention, respect"). Putting these definitions together, "extraordinary and compelling" reasons for compassionate release are those that are especially unusual and convincing.

*Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026). Serious medical conditions are often the basis for granting compassionate release. *See e.g.*, *United States v. Bang*, No. 19-CR-213-2 (LJL), 2024 WL 1051582, at *4 (S.D.N.Y. Mar. 11, 2024) (collecting cases); *see also* U.S.S.G. § 1B1.13(b)(1) (outlining serious medical conditions that amount to extraordinary and compelling reasons for a reduced sentence). Further, a district court's "reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release." *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021).

Ms. Melendez Rincon was a member of a sophisticated international burglary ring that targeted jewelry stores across the country. She had different roles in these burglaries. She might "case" a jewelry store before the burglary or perhaps she would serve as a lookout during the

burglary. On at least one occasion she accompanied the crew to the fence where the stolen jewelry was sold. While Ms. Melendez Rincon was not responsible for organizing or directing the crew of burglars, nor was she a minor participant. Ms. Melendez Rincon received a below guidelines sentence of 24 months on September 24, 2025.

Ms. Melendez Rincon now seeks compassionate release on the grounds that she is not receiving necessary medical treatment. She recounts, as was known at sentencing, that she was previously treated for cervical cancer in Florida with radiation and chemotherapy. This condition should be monitored. In December 2025, following her sentencing, Ms. Melendez Rincon underwent medical imaging in Rhode Island. As a result, a biopsy was recommended. The biopsy revealed a lesion with a recommendation for a surgical consultation. The biopsy was also "negative for atypia or malignancy" in the left breast upper quadrant and "negative for carcinoma" in the lymph node. Another location of concern was revealed as "fibroadenoma." Also during this time, Ms. Melendez Rincon alleges she experienced pain in her breast, dizziness, vomiting, and rectal bleeding. "To date, Yesenia has not been treated and has not been allowed to see a specialist." ECF No. 266 at 2. Indeed, Ms. Melendez Rincon asserts in her motion that as of April 27, 2026, "she has not been seen by any doctor, not even a gynecologist." *Id.* She further asserts that the BOP is not equipped to provide her with chemotherapy, radiation therapy and potential surgery "to prevent cancer from developing." *Id.*

Ms. Melendez Rincon argues first that her serious and unmet medical needs, the risk of her cervical cancer recurring, and the possibility that she has breast cancer, establish extraordinary and compelling reasons justifying a reduction in sentence. She further asserts that consideration of the statutory factors set forth in 18 U.S.C. § 3553(a) does not counsel otherwise.

In opposition, the Government attaches 83 pages of Ms. Melendez Rincon's medical records from the BOP. First, her assertion to her lawyer that she had not seen a doctor as of April 27, 2026, is simply not true. Upon a complaint of left breast pain, abdominal pain and blood in her stool, Ms. Melendez Rincon was seen by a doctor on April 3, 2026. The doctor ordered both a mammogram on an urgent basis; an oncology consultation on an urgent basis as well as a number of tests, x-rays and an EKG. She was seen again on April 9, 2026, when she complained of continued pain. The medical notes reflect that her "recent lab work indicates no abnormalities." And her weight was noted as stable. A radiologist found her x-rays were normal. As detailed in the Government's opposition, and in the medical records,

> The inmate's labs from about 20 days ago or completely normal essentially completely normal and they include the CBC, CMP, TSH, HgbAIC and urine analysis. Her weight has also been stable over the last two to three weeks.
>
> I also reviewed her records from the oncologist, and she did not have uterine cancer she had cervical cancer that was treated with both chemotherapy and radiation therapy. At her last visit to the doctor in September of 2025 with review of CT scan with contrast 8/2025 showed no evidence of any recurrence. She was tearful about returning to Colombia at the visit in September 2025.
>
> Her normal stool color and consistency and normal physical rectal exam of 4/3/2026, stable weight and normal lab work are reassuring. The symptoms of numbness of the hands, foot spasm are highly suggestive of anxiety. And the abdominal pain could certainly be from anxiety. This type of cancer does not believe metastasize of the breast. So it's unlikely that her complaints or worries about breast masses are due to squamous cell cervical cancer. At this point urgent GI, oncology and mammogram consults have been placed and there's not much more we can really do. It appears the gold standard for surveillance is FDG-PET/CT also maybe MRI.

On April 29, 2026, the doctor put in an urgent request for a PET/CT scan for cervical cancer and reported same to Ms. Melendez Rincon. The medical records also reveal that Ms. Melendez Rincon was scheduled to see an oncology specialist in the community to monitor for any recurrence of her cervical cancer. The records also indicate that she refused to attend the

appointment and signed and dated a form which revealed that she was advised of the purpose of the appointment and the risks of her refusal. The form was witnessed by two BOP employees. The records do not, unfortunately, reveal whether Ms. Melendez Rincon offered any reason for her refusal and the record is otherwise silent on the issue.

Finally, upon a subsequent report of pain in her breasts, Ms. Melendez Rincon was seen by the same doctor on June 25, 2026, and again on July 24, 2026, upon a complaint of blood in her urine. The Government further points out, and the records reveal, that despite her allegations in the instant motion, there is no indication that Ms. Melendez Rincon has made any complaints of dizziness or vomiting to the medical staff in the BOP. And she further told BOP personnel that her prior biopsy showed precancerous lesions and that she was told she needed a mastectomy. Ms. Melendez Rincon also refers to her "malignancy" in her request to the warden seeking compassionate release. But the biopsy results she attaches to her motion, (and which are part of the BOP file) though recommending additional evaluation and surgical consultation, were negative for the presence of cancer.

Ms. Melendez Rincon's Reply is to criticize the BOP for not acting swiftly enough; to question any assessment that she does not have breast cancer; and to dismiss these records as inaccurate to the extent they reflect a refusal of treatment.[2] Counsel speculates that Ms. Melendez Rincon did not understand the form when she signed it because it is in English and she does not speak English and further that it "defies logic" that she would refuse to see an oncologist. But the medical records are replete with Ms. Melendez Rincon's complaints of pain and other maladies.

[2] Ms. Melendez Rincon does not, however, address the inaccurate assertion in her motion that she had not been seen by any doctor as of April 27, 2026.

She is obviously able to communicate effectively, in some fashion, with medical staff and there is no non-speculative basis upon which to question the validity of the BOP record.

In short, Ms. Melendez Rincon has not demonstrated that she is in need of care that the BOP is unable or unwilling to provide. Her medical chart makes clear that the BOP has responded and continues to respond to her complaints with both testing and treatment. When they arranged for an appropriate outside cancer specialist to monitor for cervical cancer, she declined treatment. Ms. Melendez Rincon's motion is premised on the possibility that she has a more serious condition than has been heretofore diagnosed. But she eschewed efforts by the BOP to assess just that. Ms. Melendez Rincon has not demonstrated an extraordinary or compelling reason for compassionate release.[3]

Further, and independently, assessment of the Section 3553(a) factors does not counsel a reduction in sentence. Ms. Melendez Rincon was involved in at least four of many burglaries across the country which targeted jewelry stores. She participated with a highly sophisticated international burglary ring, operating principally out of Columbia. The losses were significant and the victim impact beyond just the dollar losses cannot be overstated. Many of the victims were uninsured or underinsured. The burglaries took an outsized emotional toll on the victims who had spent years building their businesses only to have it devastated by the burglary. At sentencing, when varying downward from the applicable guideline range, the Court considered Ms. Melendez Rincon's health and strong family support system as mitigating factors. The Court also considered the concept of incremental punishment as was implicated in her case. But reducing Ms. Melendez

[3] It is also notable that Ms. Melendez Rincon's release plan to re-connect with her treating oncologist is not viable as an ICE detainer has been lodged with the BOP. As a result, there is no benefit to be had in this regard. Nor is there any basis to conclude that ICE officials will or can provide swifter and more comprehensive treatment than Ms. Melendez Rincon is receiving in the BOP. Aside from the dubious nature of this proposition, that she is willing to proceed in hope of receiving such treatment is not a basis upon which compassionate release would be warranted.

Rincon's sentence to one of time served would significantly undermine the purposes of general deterrence and promoting respect for the law. Nor can the Court, on this record, conclude that there is no longer a need for specific deterrence.

For the foregoing reasons, the motion for compassionate release is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of October 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE